**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BLACK SHEEP, INC.,[1] | ) | Case No. 26-01105 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |
| | ) | |
| | ) | **Hearing Date:** January 28, 2026 |
| | ) | **Hearing Time:** 1:00 p.m. CST |

**NOTICE OF MOTION**

To: See attached list

PLEASE TAKE NOTICE that on January 28, 2026, at 1:00 p.m. CST, we will appear before the Honorable Deborah L. Thorne, or any judge sitting in that judge's place, **either** in courtroom 682 of the Everett McKinley Dirksen United States Courthouse, **or** electronically as described below, and present the **MOTION: (A) FOR AUTHORITY TO (I) PAY CERTAIN PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION, (II) PAY AND HONOR EMPLOYEE MEDICAL AND OTHER BENEFITS, AND (III) CONTINUE EMPLOYEE BENEFIT PROGRAMS; (B) TO REIMBURSE PAYROLL ADMINISTRATOR FOR PREPETITION PAYMENTS; AND (C) FOR SHORTENED AND LIMITED NOTICE THEREOF**, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 160 9362 1728. No password is required. The meeting ID can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

---

[1] The last four digits of the federal employer identification number of the debtor are 2063.

1442757_2

By: /s/ Alexander F. Brougham
Proposed Counsel for Debtor

ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
TEVIN D. BOWENS, ESQ. (ARDC #6338559)
Adelman & Gettleman, Ltd.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
(312) 435-1050
asilverman@ag-ltd.com
abrougham@ag-ltd.com
tbowens@ag-ltd.com
**Proposed Counsel for Debtor**

## CERTIFICATE OF SERVICE

I, Alexander F. Brougham, an attorney, certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method shown on January 22, 2026, at or before 11:59 p.m.

By: /s/ Alexander F. Brougham
Proposed Counsel for Debtor

2

## SERVICE LIST

### *VIA CM/ECF*

Adam G. Brief – Ustpregion11.es.ecf@usdoj.gov
Office of the U.S. Truste, Region 11

### *VIA EMAIL (20 Largest Creditors, to the Extent Email Addresses Available):*

- American Express (amexsru@aexp.com);

- Breef Inc (legal@breef.com);

- College & Military Marketing Group, LLC (jon@wilkinsmedia.com);

- Encore Nationwide, Inc. (tgowrie@encorenationwide.com);

- Fox Swibel (DMorris@foxswibel.com);

- FP Investors, LLC (rwinters@elkcapitaladvisors.com);

- Fulcrum Investing II LLC (updates@fulcruminvesting.com);

- Kathy Rifkin (kathyrifkin@protonmail.com);

- Kevin VanEkeren (updates@fulcruminvesting.com);

- LargerPond Consulting (stuart@largerpond.com);

- NJN Holdings Group (njnudelman@hnklaw.com);

- Ntooitive Digital (vikas@ntooitive.com);

- Redan Capital LLC (kyamada1201@gmail.com);

- Slugger Holdings LLC (joe@artmillgroup.com);

- Yahoo Inc. (legal@yahooinc.com);

- ZenPayroll, Inc. d/b/a Gusto (legal@gusto.com);

### *VIA FIRST-CLASS MAIL (20 Largest Creditors)*

American Express
P.O. Box 981540
El Paso, TX 79998

Capital One
P.O. Box 30285
Salt Lake City, UT 84130

Breef Inc
205 Hudson Street
Floor 7
New York, NY 10013

College & Military Marketing Group, LLC
Dept# 5934
PO Box 25008
Bradenton, FL 34206

Encore Nationwide, Inc.
2447 Pacific Coast Highway
Suite 261
Hermosa Beach, CA 90254

Fox Swibel
200 W. Madison Street
Suite 3000
Chicago, IL 60606

FP Investors, LLC
200 Robin Dr
Sarasota, FL 34236

Fulcrum Investing II LLC
P.O. Box 207
Flossmoor, IL 60422

JPMorgan Chase
1414 Woodward Ave
Mail Code LA2-7100
Ruston, LA 71270

Kathy Rifkin
10 Seagate Drive
10N
Naples, FL 34103

Kevin VanEkeren
P.O. Box 207
Flossmoor, IL 60422

LargerPond Consulting
2204 west 111th st
Chicago, IL 60643

NJN Holdings Group, LLC
11820 Gainsborough Rd
Potomac, MD 20854

Ntooitive Digital
8831 W Sahara Avenue
Las Vegas, NV 89117

Redan Capital LLC
1201 Pine Street
Winnetka, IL 60093

Slugger Holdings LLC
840 N Milwaukee Ave
Chicago, IL 60642

Yahoo Inc.
770 Broadway
New York, NY 10003

ZenPayroll, Inc. d/b/a Gusto
525 20th Street
San Francisco, CA 94107

### *VIA CERTIFIED MAIL (Depository Institutions)*

Wintrust Bank, N.A.
Doug Boersma, Chief Executive Officer
Wintrust Bank, N.A.
9700 West Higgins Road
Rosemont, IL 60018

JPMorgan Chase Bank, N.A.
Officer, Legal Department
JPMorgan Chase Bank, N.A.
Legal Papers Service (Mail Code LA2-7100)
1414 Woodward Avenue
Ruston, LA 71270-2015

## *VIA FEDEX OVERNIGHT DELIVERY*

### Secured Creditors

United Capital Funding Group LLC
c/o Gregory J. Hollier, Registered Agent
200 St. Charles Avenue
New Orleans, LA 70130

United Capital Funding Group LLC
c/o CEO/ President,
200 St. Charles Avenue
New Orleans, LA 70130

Celtic Bank Corporation
c/o Leslie Rinaldi, Registered Agent,
268 S. State St., Suite 300
Salt Lake City, UT 84111

Celtic Bank Corporation
CEO/ President,
268 S. State St.
Salt Lake City, UT 84111

BlueVine Inc.
c/o FileJet Inc., Registered Agent
144 Kings Highway Southwest, Suite 304
Dover, DE 19901

Small Business Financial Solutions, LLC
c/o Corporation Service Company,
Registered Agent
251 Little Falls Drive
Wilmington, DE 19808

U.S. Small Business Administration
Office of General Counsel
409 Third Street, SW
Washington, DC 20416

U.S. Small Business Administration
Attn: BK Notices
332 S. Michigan Ave., Suite 600
Chicago, IL 60604

Randall Winters
200 Robin Dr
Sarasota, FL 34236

Noel Nudelman
11820 Gainsborough Rd
Potomac, MD 20854

Vericast Corp.
c/o CT Corporation System, Registered
Agent
1999 Bryan St., Ste. 900
Dallas, Tx 75201

Vericast Corp.
c/o Jeff Finke
10 S. LaSalle, Suite 2510
Chicago, IL 60603

### Depository Institutions

Wintrust Bank, N.A.
Doug Boersma, Chief Executive Officer
Wintrust Bank, N.A.
9700 West Higgins Road
Rosemont, IL 60018

JPMorgan Chase Bank, N.A.
Officer, Legal Department
JPMorgan Chase Bank, N.A.
Legal Papers Service (Mail Code LA2-7100)
1414 Woodward Avenue
Ruston, LA 71270-2015

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BLACK SHEEP, INC., [2] | ) | Case No. 26-01105 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |
| | ) | |

**MOTION: (A) FOR AUTHORITY TO (I) PAY
CERTAIN PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER
COMPENSATION, (II) PAY AND HONOR EMPLOYEE MEDICAL AND OTHER
BENEFITS, AND (III) CONTINUE EMPLOYEE BENEFIT PROGRAMS; (B) TO
REIMBURSE PAYROLL ADMINISTRATOR FOR PREPETITION PAYMENTS; AND
(C) FOR SHORTENED AND LIMITED NOTICE THEREOF**

NOW COMES The Black Sheep, Inc., a Delaware corporation with its principal place of business in Illinois (the "**Debtor**"), debtor and debtor in possession, by and through its proposed undersigned counsel, and, pursuant to sections 105(a), 363, 507, 1183, and 1184 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), moves this Court (a) for authority to (i) pay certain prepetition employee wages, salaries, other compensation, and corresponding tax obligations; (ii) pay and honor employee medical and other benefits; and (iii) continue employee benefit programs; (b) to reimburse the Debtor's payroll administrator for certain prepetition payments of employee wages; and (c) for shortened and limited notice thereof (the "**Motion**"). In support of the Motion, the Debtor respectfully states as follows:

I.      **JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (M), and (O).

---

[2] The last four digits of the federal employer identification number of the debtor are 2063.

2.     The statutory predicates for the relief requested herein are sections 105(a), 363, 365, 507, 1183, and 1184 of the Bankruptcy Code. The applicable rules are Rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II.     BACKGROUND

### A.     The Chapter 11 Case

1.     On January 22, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code, commencing this case (the "**Chapter 11 Case**"). Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its business under the jurisdiction of this court as debtor in possession in accordance with 11 U.S.C. § 1184.

2.     Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Case.

### B.     The Debtor

3.     The Debtor is a college-focused campus marketing business.[3] Through content creation, field marketing, market research, and paid advertising, the Debtor spreads awareness of its clients' brands on college campuses nationwide. As one of the largest agencies operating in this space, the Debtor offers its clients unique access to an audience—namely, the 12-to-27-year-old "Gen Z" demographic—with an estimated $360 billion in spending power. The Debtor's client base primarily consists of student housing operators and consumer brands.

4.     The Debtor coordinates with over 2,000 student ambassadors on more than 200 college campuses. These ambassadors utilize their relationships and social-media presences to

---

[3] More details about the Debtor's business can be found on the Debtor's website at https://theblacksheep.marketing.

2

reach college students in a more authentic and efficient manner than conventional marketers are capable of achieving.

5.     The primary cause of the filing of the Chapter 11 Case was the issuance of citations to discover assets (the "**Citations**") initiated by the Debtor's former landlord (the "**Former Landlord**"). The Former Landlord holds a judgment against the Debtor, entered in the Circuit Court of Cook County, Illinois, in the amount of approximately $660,000. As a result of one of the Citations, the bank account used by the Debtor to process its payroll was frozen. Either contemporaneously with or shortly after the filing of this Motion, the Debtor intends to file a complaint seeking to avoid the lien resulting from the issuance of the Citations, *see* 735 ILCS 5/2-1402(m), as a preferential transfer pursuant to sections 544 and 547 of the Bankruptcy Code.

6.     In addition to the Former Landlord's citation lien, the property of the Debtor's bankruptcy estate is subject to five blanket security interests. One of these security interests was validly perfected; the remaining four were not. The Debtor intends to seek avoidance of the unperfected security interests in the Chapter 11 Case, either through a Chapter 11 plan or in adversary proceedings.

### C.     The Employees

7.     The Debtor's core workforce consists of thirty-two (32) individuals: sixteen (16) full-time employees and sixteen (16) part-time independent contractors.[4] The skills, training, and institutional knowledge of the Employees are essential to the Debtor's ability to effectively administer its business during the Chapter 11 Case and to maximize the value of the Debtor's assets.

---

[4] While the Debtor's independent contractors do not technically constitute employees, in the interest of simplicity, the Debtor's core workforce of thirty-two individuals is referenced herein as the "**Employees**," and each of them, an "**Employee,**" irrespective of their legal classification.

8. As of the Petition Date, there are amounts accrued and owing under or related to the Debtor's compensation and benefit programs. All or most of the Employees are dependent on their compensation and benefits to pay their daily living expenses, and may leave the Debtor's workforce if their compensation and other benefits are not paid.

## III. RELIEF REQUESTED

9. The Debtor requests authority to pay outstanding wages, salary and/or commissions accruing prior to and including the Petition Date in the total gross amount of approximately $15,000 (collectively, the "**Prepetition Wage Claims**"); and to pay other prepetition claims arising in connection with, and otherwise maintain in effect, as applicable, the Debtor's employee medical benefits, health and other insurance, vacation time and sick leave, reimbursable expenses, and accrued prepetition contributions to employee benefit plans as detailed further below (the "**Employee Benefit Programs**," and together with the Prepetition Wage Claims, all prepetition withholdings and taxes relating to employee wages, and all costs incident thereto, the "**Prepetition Employee Obligations**").[5]

10. Additionally, the Debtor requests authority to reimburse its payroll-services provider, ZenPayroll, Inc. d/b/a Gusto (the "**Payroll Provider**") in the amount of $27,064.53, for a payment of the Debtor's Prepetition Employee Obligations that the Payroll Provider made to Employees prior to the Petition Date (the "**Payroll Provider Reimbursement**"). As addressed in more detail below, this payment is necessary to ensure the Payroll Provider's services continue without further interruption.

---

[5] To protect the confidentiality of employee information, the names, addresses, and specific wage claims of individual employees have not been disclosed herein. Such information will be provided to the Court, the Subchapter V Trustee, and/or the United States Trustee (or other interested parties, provided sufficient guaranties of confidentiality are in place), upon request.

4

11.     The Debtor further requests that, in light of the nature and exigency of the relief requested herein, the Court allow for notice of the Motion to be served upon the Debtor's secured creditors and the holders of the twenty (20) largest unsecured claims against the Debtor on not less than seven (7) days' notice, and that no other or further notice of the Motion be required.

A.     **Wages and Salaries**[6]

12.     As stated above, the Employees comprise: (a) sixteen (16) full-time employees, who each work approximately forty (40) hours per week and are paid on a salaried basis, and (b) sixteen (16) part-time independent contractors, who are paid on an hourly basis. To the extent earned, the Debtor provides overtime pay to its hourly employees in accordance with applicable state and federal law.

13.     The Debtor is not a party to a collective bargaining agreement or similar labor agreement.

14.     Employees are generally paid every other week, by direct deposit into their bank accounts, for the preceding fifteen (15) days of service. The Debtor operates two payment cycles, into which each Employee is assigned:

- Employees in Cycle A are paid on the 1st and 16th days of each month, for the periods running: (a) from the 16th day of the previous month through the end of that month, and (b) from the 1st through 15th days of the same month, respectively.

- Employees in Cycle B are paid on the 8th and 23rd days of each month, for the periods running: (a) from the 23rd day of the previous month through the 7th

---

[6] Employee data, including total employees, wages and salaries, are approximated as of the Petition Date.

day of the same month; and (b) from the 8th through the 22nd days of the same month, respectively.

15.     No single Employee is owed prepetition wages in excess of the $17,150.00 priority amount under subsection 507(a)(4) of the Bankruptcy Code.

16.     No single Employee is owed, or will be paid pursuant to this Motion, prepetition wages or salary in excess of the $17,150 priority provided under section 507(a)(4) of the Bankruptcy Code.

17.     The only Employees who may constitute "insiders" of the Debtor under section 101(31) of the Bankruptcy Code are Atish Doshi, the Debtor's President/CEO, and Brendan Bonham, the Debtor's COO. As members of "Cycle B," however, Messrs. Doshi and Bonham are not among the employees whose wages and salaries whose payment is sought to be approved by this Motion.

18.     The Debtor seeks authority to satisfy all Prepetition Wage Claims in the amounts finally determined using the Debtor's customary and ordinary methods. Payment of these amounts is critical to the continued operation of its business.

**B.     <u>Social Security, Income Taxes, and Other Withholdings and Deductions</u>**

19.     Attendant to the payment of the Debtor's payroll obligations, the Debtor is also obligated to withhold and pay federal, state, and local withholding taxes for itself and the Employees.

20.     These amounts have historically been calculated, withheld, and remitted to the applicable authorities by the Payroll Provider. Due to the Payroll Provider temporarily discontinuing services as described in Part D below, however, the Debtor has collected, but not remitted, several payroll periods' worth of taxes. Should this Motion be granted, the Debtor intends

6

to work with the Payroll Provider to reconcile and pay these taxes as part of the Prepetition Employee Obligations.

21.     As part of its request to pay Prepetition Employee Obligations, the Debtor seeks authorization to pay all employer and employee federal, state, and local withholding and payroll-related taxes relating to prepetition periods, including all withholding taxes, Social Security taxes, Medicare taxes, and all other miscellaneous withholdings.

22.     Additionally, the Debtor has been authorized, from time to time, to make deductions from Employees' wages, including for contributions to various benefit programs (many of which are described below). To the extent any of these are considered property of the Debtor's estate, the Debtor requests permission to allow such deductions to continue, and to be paid to their designated recipients, consistent with and in the ordinary course of business.

### C.     **Employee Benefit Programs**

23.     The Debtor offers eligible Employees access to health, dental, vision, life, disability and worker's compensation insurance, and other benefits, as described below. Certain of the benefits require payments by the Debtor and may be unpaid as of the Petition Date because certain obligations may have accrued in whole or in part prior to the Petition Date, but do not become payable in the ordinary course of the Debtor's business until after the Petition Date.

### i.     **Insurance**

24.     Eligible Employees are offered health, dental, vision, and life insurance through United Healthcare. The Debtor pays a portion of the premiums for these policies, with the remaining portions withheld from Employees' paychecks. The Debtor's monthly obligations under these policies typically total approximately $4,000.00. Additionally, the Debtor offers its employees a monthly $50 "wellness stipend," which can be used on health-related expenses such as gym memberships.

25.     As a fundamental component of the Employee Benefit Programs, the Debtors intend to maintain employee health, dental, life, disability, workers' compensation, and similar insurance for their Employees ("**Employee Insurance Benefits**") during the Chapter 11 Case.[7] To the extent there are any claims relating to Employee Insurance Benefits which arose prior to the Petition Date and remain unpaid, the Debtor requests authority to pay such claims, consistent with and in the ordinary course of their business. The Debtor seeks authority to pay all obligations related to Employee Insurance Benefits incurred prior to the Petition Date, as well as any health insurance coverage obligations that arose prepetition even in the event such amounts exceed the statutory limits provided in section 507(a)(5) of the Bankruptcy Code.

### ii.     PTO

26.     In addition to wages and salaries, the Debtor provides eligible Employees (*i.e.* regular full time Employees) paid time off ("**PTO**") for vacations, sick leave, and other time off, in addition to paid time off for certain holidays. The Debtor's policy is to provide unlimited PTO to its employees. Because PTO is taken on an as-needed basis, Employees do not accrue or carry over days of PTO. The Debtor requests authority to continue its prepetition policies in this regard.

### iii.     Reimbursable Business Expenses

27.     The Debtor reimburses certain Employees for reasonable business expenses incurred in the performance of their respective duties, such as mileage, parking and tolls, airfare, lodging, and meal expenses while performing company business. The Debtor requests authority to reimburse all unpaid business expenses incurred by its Employees prior to the Petition Date

---

[7]  To the extent mandated by the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 *et seq*. and other state and federal laws, and consistent with their ordinary business practices prior to the Petition Date, the Debtors also desire to maintain Employee Insurance Benefits for eligible former employees who have left the service of the Debtors prior to the Petition Date.

(estimated to be in a total amount of less than $10,000.00, consistent with and in the ordinary course of the Debtor's business.

### iv.   401(k) Plan

28.   The Debtor sponsors a 401(k) plan for eligible Employees, for which the third-party administrator is Guideline, Inc. Eligible Employees may make pre-tax contributions through salary deductions, which are deducted and remitted by the Payroll Provider. The Debtor does not make any matching contributions.

29.   The Debtor requests authority to make deposits of the prepetition Employee earnings to the retirement plan and to continue making the requisite matching contributions, consistent with and in the ordinary course of business.

### D.   Reimbursement of Payroll Provider

30.   Historically, the Payroll Provider has processed the Debtor's payroll and provided a mechanism for paying employee wages and benefits. The Payroll Provider also calculated all proper employer and employee withholdings from the payroll, and remitted tax withholdings directly to the applicable taxing authorities. Payments were made directly to the Payroll Provider by electronic funds transfer from the Debtor's checking account at Wintrust Bank, N.A. ("**Wintrust**"), with its account number ending in 8536 (the "**Wintrust Account**"), whereupon the Payroll Provider remits funds as appropriate.

31.   On or about December 15, 2025, the Debtor approved an electronic funds transfer from the Wintrust Account to the Payroll Provider in the amount of $27,064.53, to cover that week's payroll and withholding obligations. The Payroll Provider duly paid the applicable Employees their corresponding salaries and wages, and remitted the applicable withholdings.

9

32.     But as this process was taking place, Wintrust was served with a third-party citation to discover assets by judgment creditor Vericast Corp, which had been issued on December 15, 2025. As a result of the citation, Wintrust caused the Debtor's transfer to the Payroll Provider to be reversed. At that time, however, the Payroll Provider had already paid the applicable salaries, wages, and withholdings.

33.     Because the Debtor's payment to the Payroll Provider was reversed, the Payroll Provider is now owed $27,064.53 for the employee salaries, wages, and withholdings it paid. And the Payroll Provider has informed the Debtor that it will not continue its payroll processing services for the Debtor unless and until this debt is paid in full.

34.     In the weeks following the payroll snafu, the Debtor has managed to continue paying its employees by paying their salaries and wages directly, rather than using the Payroll Provider as an intermediary. But this temporary stopgap measure is untenable in the long term, because the Debtor lacks the information needed to make the appropriate tax and other withholdings, and to generate Forms W-2 and 1099 for the Employees.

35.     The Debtor has explored the possibility of switching to a new payroll provider to process payroll while the Debtor operates in the Chapter 11 Case. But because of the extent of the information already collected and possessed by the Payroll Provider concerning Employee wages, salaries, benefits, and withholdings, the Debtor has determined that it would be overly burdensome to switch providers. Doing so would likely result in added expenses and delays in payroll processing and the submission of information to taxing authorities. Additionally, if the Debtor were required to reconstruct and reconcile its 2025 payroll data, its management would be diverted from efforts to maintain the business in Chapter 11.

36.     Consequently, in addition to paying the Prepetition Employee Obligations, the Debtor seeks authority to reimburse the Payroll Provider in the amount of $27,064.53, so that it will continue to provide its invaluable services to the Debtor in the ordinary course of the Debtor's business.

## IV.    BASIS FOR RELIEF REQUESTED

37.     Ample authority exists to pay prepetition employee obligations where doing so will benefit a debtor's estate. The benefit of paying the Prepetition Employee Obligations in the Chapter 11 Case can be measured against the adverse impact to the Debtor's estates if the Employees do not remain in the Debtor's employ.

38.     The authority to pay Prepetition Employee Obligations is found in section 1184 of the Bankruptcy Code, which vests debtors in possession with authority to continue operating their businesses. Sometimes this authority and the concomitant duty to maximize estate value may be fulfilled only through the pre-plan payment of certain unsecured claims. *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003); *In re CoServ, L.L.C.*, 273 B.R. 487, 498 (Bankr. N.D. Tex. 2002); *cf. In re Commercial Mortg. & Fin., Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting that a debtor in possession "has the discretionary authority to exercise [its] business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation").

39.     Additionally, the Court may authorize payment of the Prepetition Employee Obligations under section 363(b)(1) of the Bankruptcy Code, which provides that, after notice and a hearing, a debtor in possession may "use . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In *In re Kmart Corp.*, the Seventh Circuit Court of Appeals suggested that section 363(b)(1) of the Bankruptcy Code is an appropriate mechanism for

11

payment of certain necessary prepetition debts, provided such payments will ultimately benefit all creditors. *In re Kmart Corp.*, 359 F.3d 866, 874 (7th Cir. 2004). A debtor's business judgment as to the use, sale, or lease of estate property is appropriate if supported by "sound business reasons." *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991).

40.     Paying the Prepetition Employee Obligations is supported by sound business reasons. The Debtor relies on the services of the Employees as detailed above. Missed or reduced paychecks would likely induce significant numbers of the Employees to find work elsewhere, at a time when the Debtor needs them the most. And replacing the Employees, in whole or in part, is not a viable option, considering their familiarity with the operations and affairs of the Debtor.

41.     Further, the objectives of the Chapter 11 Case are to maintain the Debtor's operations and to effectuate a plan of reorganization that maximizes the available recovery to its creditors. Failing to fulfill the Prepetition Employee Obligations would cause irreparable harm to and jeopardize the success of these objectives. Consequently, in addition to satisfying the "sound business reasons" standard for motions under section 363 of the Bankruptcy Code generally, payment of the Prepetition Employee Obligations also satisfies the more specific "benefit to all creditors" standard articulated in *Kmart*. *See* 359 F.3d at 874. Paying the Prepetition Employee Obligations will greatly help the Debtor in maintaining necessary operations and activities.

42.     The same rationale applies to the payment of the Payroll Provider Reimbursement, which is crucial to ensuring that the Prepetition Employee Obligations are promptly and correctly satisfied. Having explored (and indeed attempted) other means of administering its payroll in the weeks after the Payroll Provider ceased performing services, the Debtor has concluded it is incapable, without undergoing disproportionate administrative burdens and expense, of either continuing to administer its payroll unassisted, or switching to another provider. The Debtor

12

believes, in its business judgment, that paying the Payroll Provider Reimbursement will result in a commensurate "benefit to all creditors," *id*. at 874, by allowing it to conserve its resources and maintain its business in the ordinary course.

43.     Courts in this jurisdiction regularly authorize chapter 11 debtors in possession to pay prepetition employee wages and benefits in instances where employee retention is critical to the success of their bankruptcy cases. *See, e.g.*, *In re St. Margaret's Health – Peru, et al.,* No. 23-11641 (Bankr. N.D. Ill. Sep. 13, 2023), ECF No. 40; *In re Arro Corporation, f/k/a Arro Packaging Company,* No. 19-35238 (Bankr. N.D.Ill Dec. 20, 2019), ECF No. 35; *In re Caesars Entm't Operating Co.*, No. 15-01145 (Bankr. N.D. Ill. Mar. 6, 2015), ECF No. 617; *In re Balmoral Racing Club, Inc., et al.*, No. 14-45711 (Bankr. N.D. Ill. Jan. 8, 2015), ECF No. 70; *In re ITR Concession Co.*, No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014), ECF No. 175; *In re SGK Ventures, LLC*, No. 13-37603 (Bankr. N.D. Ill. Sept. 26, 2013), ECF No. 26; *In re Edison Mission Energy*, No. 12-49219 (Bankr. N.D. Ill. Jan. 17, 2013), ECF No. 319.

44.     For the foregoing reasons, the Debtor respectfully requests it be granted authority to pay the Prepetition Employee Obligations, if and when they are due and owing, after the Petition Date, consistent with the Debtor's prepetition practices, and to pay the Payroll Provider Reimbursement.

## V.     SATISFACTION OF BANKRUPTCY RULE 6003

45.     Bankruptcy Rule 6003 empowers a court to grant relief in the first twenty-one (21) days after the filing of a bankruptcy petition "to the extent that relief is necessary to avoid immediate and irreparable harm." Accordingly, the Debtor submits, to the extent Bankruptcy Rule 6003 applies to the relief granted herein, its requirements are satisfied.

13

## VI.  WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

46.  Because the Debtor, its estate, and its creditors will suffer immediate and irreparable harm if all Prepetition Employee Obligations are not timely paid, and in light of the relatively small expenditure required to do so, the Debtor requests the notice provisions of Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h) be excused, to the extent they are applicable to the relief sought herein.

## VII.  NOTICE

47.  Notice of the filing of this Motion and the hearing scheduled therefor has been provided, on six (6) days' notice: by CM/ECF to the Office of the United States Trustee for Region 11; by overnight delivery service to the Debtor's Secured Creditors and banks; and by regular mail and email (to the extent email addresses could be found in the Debtor's records) to the holders of the Debtor's 20 largest unsecured claims.

48.  Bankruptcy Rule 2002(a)(2) provides that, "unless the court for cause shown shortens the time or directs another method of giving notice," a motion seeking to use property of the estate other than in the ordinary course of business must be served upon "the debtor, the trustee, all creditors and indenture trustees" on 21 days' notice. Fed. R. Bankr. P. 2002(a)(2). Likewise, this Court's Local Rule 9013-1 requires that a notice of motion must be served at least 7 days before the date of presentment. L.R. 9013-1(D). Both of these requirements, however, may be modified at the Court's discretion. *See* Fed. R. Bankr. P. 2002(m) (authorizing the Court to "enter orders designating the manners in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules"); *see also* Fed. R. Bankr. P. 2002(a)(2).

49.  As discussed in more detail above, if the Debtor was required to adhere strictly to the notice requirements of the federal and local bankruptcy rules, the Employees would not timely

14

receive their anticipated and needed compensation. Given the critical and time-sensitive nature of the relief requested herein, the Debtor submits that "cause" exists to shorten and limit the notice requirements applicable to the Motion, and to deem the notice period and parties set forth above and in the attached certificate of service to be adequate and sufficient under the circumstances.

WHEREFORE, The Black Sheep, Inc., debtor and debtor in possession herein, respectfully requests the entry of an order in accordance with the foregoing recommendations in the form filed herewith and made a part hereof without further notice, and for such other and further relief as is just.

Respectfully Submitted,

THE BLACK SHEEP, INC.

By: /s/ Alexander F. Brougham
Proposed Counsel for Debtor

ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
TEVIN D. BOWENS, ESQ. (ARDC #6338559)
Adelman & Gettleman, Ltd.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
(312) 435-1050
**Proposed Counsel for Debtor**
asilverman@ag-ltd.com
abrougham@ag-ltd.com
tbowens@ag-ltd.com

15
